USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUL 1 1 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

IRBY, et al.,

        Plaintiffs,

-v-                              No. 05 Civ. 9935 (LTS)(KNF)

THOMPSON, et al.,

        Defendants.

-------------------------------------------------------x

### MEMORANDUM ORDER RELATING TO MOTIONS FOR PRELIMINARY INJUNCTION AND FOR SUMMARY JUDGMENT

In this action relating to rights to use the trade- or service mark or trade name "Hi-Five" or "Hi-5" in connection with recordings by a singing group composed of fewer than all of the original members of the singing group that had success performing under that name in the 1990s, the Plaintiff members of the original group seek a preliminary injunction prohibiting defendants from "selling, manufacturing, advertising, marketing or otherwise utilizing the mark Hi-Five/Hi-5." Plaintiffs also move for summary judgment. This Memorandum Order addresses both motions.

The Court has jurisdiction of Plaintiffs' federal Lanham Act claims pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction of Plaintiffs' state law claims.

The defendants named in this action comprise Anthony Thompson (now deceased), an original member of the group who allegedly created a new group that issued recordings and planned to tour under the name "Hi-Five," a number of record distribution and promotion entities, and RN'D Distribution LLC, a firm that contracted with N-Depth Entertainment, an entity allegedly affiliated with Thompson, to promote and distribute Thompson's group's new record and planned performances. Although the Court's records include documentation of service on most of the

Copies mailed to parties on list
Chambers of Judge Swain 7/11/07

defendants, none has appeared in the action other than RN'D.[1] Plaintiffs' motion papers included no certificate of service and referred only to efforts to resolve the matter informally with RN'D.[2] In that RN'D is the only party which apparently received notice of the motions (and that only through the Court's ECF system), the Court will deal with the merits of the motions only insofar as they seek relief against RN'D. The motions will be denied as against all other defendants, who have not been given an opportunity to respond to them.

Preliminary Injunction Motion

In this Circuit, preliminary injunctive relief may be granted only upon a showing of (1) irreparable harm and (2) either (a) likelihood of success on the merits of the action or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, coupled with a balance of hardships tipping decidedly in favor of the moving party. Green Party of New York State v. New York State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004).

Plaintiffs' motion papers cite activity by RN'D in the fall of 2005 and early 2006 in connection with the promotion and distribution of Thompson's new "Hi-Five" group's record and anticipated performances. RN'D's opposition papers include an affidavit from its president, one Darin Gates, acknowledging that RN'D had a contract to provide "pressing and distribution services" to N'Depth Entertainment, denying that it performed certain of the promotional activities Plaintiffs'

---

[1] Plaintiffs entered into stipulations of discontinuance with defendants Amazon.com and Tower Records. Defendant Musicland Group has filed a Suggestion of Bankruptcy. Plaintiffs notified the Court of defendant Thompson's death in June 2007.

[2] The undersigned's Individual Practices Rules require an effort, prior to the commencement of any motion practice, to resolve consensually the issues to be raised in the motion.

papers attributed to it, and representing that

> RN'D has ceased all pressing, marketing and distribution services pursuant to the Pressing Agreement, has recalled all albums that were distributed to retailers or third party distributors and has ceased all marketing and promotional activities with respect to the products which are the subject matter of this action . . . . These actions were taken upon notice of Plaintiffs' claim of interest once RN'D was unable to verify or ascertain the superiority of the rights of N'Depth and was unable to secure the independent authorization and/or notice from N'Depth to take such actions on N'Depth's behalf.

(Aff. of Darin Gates, dated July 10, 2006 ("6/06 Gates Aff."), ¶13.) Gates further represented that

> In addition, RN'D has removed all reference to, and images of the allegedly infringing Hi-Five mark in all marketing venues under its control, all of which were undertaken pursuant to the Pressing Agreement on behalf of N'Depth. RN'D intends to refrain from re-introducing such references to or images of the mark, or from taking any other steps pursuant to the Pressing Agreement on behalf of N'Depth.

(Id., ¶14.)

Plaintiffs have filed no reply papers, nor proffered evidence of any further alleged violations of their rights by RN'D. Under these circumstances, there is no basis for the requisite finding that issuance of preliminary injunctive relief is necessary to prevent irreparable harm.

Accordingly, Plaintiffs' motion for a preliminary injunction is denied in its entirety.

Summary Judgment Motion

Summary judgment is to be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is considered material to summary judgment "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine

one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

The Court has reviewed carefully the parties' evidentiary proffers in connection with this motion and has drawn all reasonable inferences in favor of the non-moving party, RN'D.

Plaintiffs have proffered evidence that they were among the original members of the 1990s singing group "High-Five/Hi-5" and that they, along with defendant Thompson, are joint owners of the marks here in question. Through conclusory assertions in an affidavit of Plaintiff Irby, and hearsay material purportedly authored by a former lawyer for the group, Plaintiffs seek to establish that they and defendant Thompson entered into an agreement pursuant to which the marks could be used only by majority vote of the group. Plaintiffs deny that they ever gave permission to Thompson to utilize the marks in connection with the activity that is the subject of this lawsuit, namely Thompson's recording and marketing of a holiday album and an album entitled "Hi-Five: the Return." Plaintiffs' allegations regarding the involvement of RN'D in this activity are, for the most part, made on information and belief. (See Aff. of Treston Irby, dated March 22, 2006, at ¶10). However, RN'D's own affidavit submitted in opposition to this motion practice includes admissions that RN'D contracted with N-Depth Entertainment, Inc. to provide "pressing and distribution" services in connection with Thompson's "High-Five" activity. (See 6/06 Gates Aff.) Plaintiffs have also proffered purported screen prints from RN'D-related web sites that tout "Hi-Five: the Return" as

from "the group that brought you" one of the earlier group's hits (Aff. of Christopher Brown, dated May 12, 2006 ("5/06 Brown Aff."), Exh. C) and advertise the album in the context of remarks about the historical configuration of the band, lauding the album as "the return of Hi-Five" (5/06 Brown Aff., Exh. F). Plaintiffs have also proffered screen prints of what their attorney describes as "a true and accurate copy of . . . articles from German, Asian and an American news releases, [sic] and comments from fans about Hi-Five on the internet," explaining that "[t]he photos are of the original Hi-Five, however, the music relates to the fraudulent Hi-Five distributed, sold, marketed and utilized by the defendants." (Aff. of Christopher Brown, dated June 9, 2006, ¶3 and Exh. B.) These latter screen prints bear no references to RN'D, nor do they indicate the authorship of their content. To the extent they are proffered to demonstrate customer confusion they are, at best, ambiguous hearsay.

In their Amended Complaint, Plaintiffs assert causes of action against "all defendants," including RN'D, for: "violation of federal trademark law" (Count II) by reason of use of "a similar mark which is likely to cause confusion among consumers as to the source of the parties['] respective goods and services," (Am. Compl. ¶49); for "violation of state of New York Trademark/Servicemark Common Law" (Count III) by reason of use of the Hi-Five mark without Plaintiffs' permission and within the state of New York and "diluting the intellectual property owned by" Plaintiffs (Id. ¶54); for "violation of federal common law" (Count IV) by reason of likelihood of confusion with the trademark owned by Plaintiffs (Id. ¶¶58-62); and for "violation of unfair competition statute" (Count VI) by reason of likely confusion, dilution of the Hi-Five Mark and unfair competition with the anticipated release of an album of music that would have benefitted Plaintiffs (Id. ¶¶71-74). A "Count V" demands preliminary and permanent injunctive relief.

For substantially the reason explained above in connection with Plaintiffs' application for preliminary injunctive relief, the summary judgment motion is denied insofar as Plaintiffs seek

injunctive relief in respect of any of their causes of action.

To the extent Plaintiffs seek to establish RN'D's liability for damages through this motion practice, their proffered evidence is insufficient to demonstrate that actual consumer confusion has resulted from the RN'D activities documented in the record.

The Lanham Act makes actionable any

> false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person, or . . . in commercial advertising or promotion, missrepresent[ation of] the nature, characteristics, qualities or geographic origin of his or another person's goods, services, or commercial activities.[3]

A plaintiff must prove actual consumer confusion where, as here, damages are sought. See, e.g., Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc., 926 F.2d 134, 139 (2d Cir. 1991); Getty Petroleum Corp. v. Island Transp. Corp., 878 F.2d 650, 655 (2d Cir. 1989); Information Superhighway, Inc. v. Talk America, Inc., 395 F. Supp. 2d 44, 55 (S.D.N.Y. 2005).

Here, Plaintiffs' non-hearsay evidence is entirely inadequate to demonstrate actual confusion. Accordingly, they have not demonstrated that they are entitled to judgment as a matter of law on their Lanham Act false designation, unfair competition, or common law unfair competition claims and their motion will be denied as to those claims.

Nor have Plaintiffs proffered sufficient evidence to warrant a grant of summary judgment on their dilution claims. They have not presented competent evidence establishing that their mark is famous, nor of likelihood of dilution of the mark by reason of RN'D's activities. See 15

---

[3] 15 U.S.C. §1125(a) (West 1998). New York's unfair competition statute requires a likelihood of confusion analysis that is similar to that required by the Lanham Act. Malletier v. Donney & Bourke, Inc., 454 F.3d 108, 119 (2d Cir. 2006); Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 539 n.5 (2d Cir. 2005).

U.S.C. § 1125(c) (West Supp. 2007).

Accordingly, Plaintiffs' motion for summary judgment is denied in its entirety.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions for a preliminary injunction (Docket entry number 50) and for summary judgment (Docket entry number 51) are denied.

Plaintiffs and RN'D shall promptly contact Magistrate Judge Fox's chambers to schedule a pretrial conference and a settlement conference.

SO ORDERED.

Dated: New York, New York
   July 11, 2007

_____
LAURA TAYLOR SWAIN
United States District Judge